Andrew M. Calamari
Lara Shalov Mehraban
Adam S. Grace
Michael D. Birnbaum
Kristin M. Pauley
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281-1022
Phone:  (212) 336-0523 (Birnbaum)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | 17-CV-_____ (  ) |
| Plaintiff, | |
| -against- | Jury Trial Demanded |
| DAVID N. FUSELIER, ROY W. ERWIN, and INTEGRATED FREIGHT CORPORATION, | |
| Defendants. | |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission"), for its complaint against defendants David N. Fuselier ("Fuselier"), Roy W. Erwin ("Erwin"), and Integrated Freight Corporation ("Integrated Freight," and together with Fuselier and Erwin, "Defendants"), alleges as follows:

## SUMMARY

1.      This action concerns a scheme perpetrated by Fuselier to fraudulently improve the financial statements of two publicly traded companies, Integrated Freight and New Leaf Brands, Inc. ("New Leaf," and, together with Integrated Freight, the "Companies") by improperly

removing significant liabilities.  Integrated Freight is in the motor freight business, and New Leaf is in the beverage business.  Beginning in 2012, Fuselier was the chairman, chief executive officer, and principal financial and accounting officer of both Companies.

2.      In 2012, the Companies sold certain subsidiary companies to a newly-formed third-party, Deep South Capital LLC ("Deep South").  The subsidiaries had no operations and their assets were exceeded by their liabilities.  The consideration for each sale was $1, and Deep South agreed to assume the subsidiaries' liabilities and to generally indemnify the Companies.  In return, the Companies issued shares of common stock to Deep South, but the liabilities that Deep South assumed far exceeded the value of the shares.

3.      Fuselier caused the formation of, exerted significant control over, and made decisions on behalf of Deep South.  He convinced Erwin, a long-time friend and business associate, to be Deep South's sole owner and managing member.

4.      Fuselier concealed the true nature of the transactions from the Companies' auditors, and falsified or caused to be falsified the Companies' books and records.  As a result, the Companies filed with the Commission materially false and misleading reports during the period July 2012 to April 2015.  Specifically, the Companies failed to disclose the related-party nature of the transactions.  New Leaf also improperly derecognized outstanding debt related to the subsidiary it sold to Deep South and made misleading disclosures concerning Deep South's purported indemnification of New Leaf post-sale.  And Integrated Freight failed to disclose or account for a judgment issued against it by a Nebraska state court.

5.      Since taking on his senior roles at the Companies, Fuselier reviewed, approved, and signed each of the Companies' Commission filings.  Fuselier also signed five certifications required by Section 302 of the Sarbanes-Oxley Act of 2002 and Exchange Act Rule 13a-14(a)

("SOX certifications") that were included in New Leaf's and Integrated Freight's filings. Fuselier knew or was reckless in not knowing that the Companies' annual and quarterly reports and the SOX certifications he signed were materially false and misleading concerning the subsidiary sales to Deep South.

## VIOLATIONS

6.   By virtue of the conduct alleged herein, the Defendants, directly or indirectly, singly or in concert, violated and are otherwise liable for violations of the federal securities laws, as follows:

7.   Fuselier:

a.   Violated Sections 17(a)(1), (2) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), (2) and (3)];

b.   Violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b) and (c), 13a-14(a), 13b2-1 and 13b2-2 thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c), 240.13a-14(a), 240.13b2-1 and 240.13b2-2]; and

c.   Aided and abetted violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11 and 240.13a-13], in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

8.   Erwin:

a.   Aided and abetted violations of Section 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (2) and (3)], Section 10(b) of the Exchange Act

[15 U.S.C. §§ 78j(b)] and Rules 10b-5(a), (b) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c)], in violation of Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)] and Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

9.    Integrated Freight:

    a.  Violated Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)];

    b.  Violated Sections 10(b), 13(a) and 13(b)(2)(A) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a) and 78m(b)(2)(A)] and Rules 10b-5(a), (b) and (c), 12b-20, 13a-1, and 13a-11 thereunder [17 C.F.R. §§ 240.10b-5(a), (b) and (c), 240.12b-20, 240.13a-1 and 240.13a-11].

10.    Unless the Defendants are permanently restrained and enjoined, they will again engage in the acts, practices, transactions, and courses of business set forth in this complaint and in acts, practices, transactions, and courses of business of similar type and object.

## JURISDICTION AND VENUE

11.    The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], seeking a final judgment:  (1) restraining and permanently enjoining each of the Defendants from engaging in the acts, practices and courses of business alleged against them herein; (b) ordering Fuselier to disgorge all ill-gotten gains and to pay prejudgment interest on those amounts; (c) imposing civil money penalties on each of the Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (d) ordering Fuselier and Erwin each barred from serving as an officer and

4

director of any public company pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and (e) ordering Fuselier and Erwin barred from participating in any offering of a penny stock pursuant to Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)] and Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)].

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].  The Defendants, either directly or indirectly, have made use of the means or instrumentalities of interstate commerce, of the mails, of the facilities of national securities exchanges, and/or the means or instruments of transportation or communication in interstate commerce in connection with the acts, practices, and courses of business alleged herein.

13.     Venue lies in the Southern District of New York pursuant to 28 U.S.C. §1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this complaint occurred within the Southern District of New York, including investor meetings held in the Southern District of New York.  In addition, venue is proper in this district because investors in the Companies reside in this district.

## DEFENDANTS

14.     **Fuselier**, age 57, is a resident of Brookfield, Connecticut.  Since February 15, 2012, Fuselier has been the chairman, president, chief executive officer, chief financial officer, and principal accounting officer of New Leaf.  From August 2, 2012 to November 18, 2016, Fuselier was the chairman, chief executive officer, and principal financial and accounting officer

of Integrated Freight. Fuselier is also the president of Fuselier and Company, Inc. ("Fuselier and

Co."), a private Connecticut corporation, which advertises that it provides capital and strategic

guidance to companies with revenues under $300 million. From April to May 2014, Fuselier

also served as the chief executive officer of BioMedical Technology Solutions ("BioMedical")

(CIK No. 1443062). By Order dated August 8, 2014, the Commission revoked the registration

of each class of registered securities of BioMedical, pursuant to Section 12(j) of the Exchange

Act.

      15.    **Erwin**, age 58, is a resident of Pineville, Louisiana. Erwin has been the sole

owner and managing member of Deep South since its formation in February 2012. From March

2013 to November 2016, Erwin also was the chairman and chief executive officer of Oncologix

Tech, Inc. ("Oncologix"), a Nevada corporation specializing in surgical and medical instruments

and apparatus, whose common stock (symbol "OCLG") is quoted on OTC Link as an OTC Pink

"limited information" issuer (CIK No. 799694). Erwin currently serves as the President of

Oncologix's operating subsidiaries.

      16.    **Integrated Freight** (CIK No. 783284) is a Florida corporation located in

Danbury, Connecticut. Integrated Freight is a holding company that provides long haul,

regional, and local motor freight services to its customers through its two operating subsidiaries,

Morris Transportation, Inc. and Smith Systems Transportation, Inc. Integrated Freight has a

class of securities registered with the Commission pursuant to Section 12(g) of the Exchange

Act. Integrated Freight's common stock (symbol "IFCR") is quoted on OTC Link as an OTC

Pink "limited information" issuer. From October 5, 2012 through May 1, 2015, Integrated

Freight issued approximately 288 million new shares of common stock.

## RELATED ENTITIES

17.     **New Leaf** (CIK No. 806175) is a Nevada corporation, but the State of Nevada revoked its business charter because New Leaf has failed to file its annual list and pay the appropriate fees since June 30, 2014.  New leaf is located in Southbury, Connecticut, and purports to be a diversified beverage holding company acquiring brands, distributors, and co-packers in North America.  During the relevant period, New Leaf had a class of securities registered with the Commission pursuant to Section 12(g) of the Exchange Act.  New Leaf's common stock (symbol "NLEF") was quoted on OTC Link as an OTC Pink "limited information" issuer.  From July 30, 2012 through October 4, 2013, New Leaf issued approximately 56 million new shares to investors.  New Leaf obtained $420,000 from the issuance of promissory notes during the same period.  By Order dated October 16, 2015, the Commission suspended trading in the common stock of New Leaf for a period of ten business days, pursuant to Section 12(k) of the Exchange Act, because New Leaf had not filed any periodic reports since the period ended September 30, 2012.  By Order dated January 15, 2016, the Commission revoked the registration of each class of registered securities of New Leaf, pursuant to Section 12(j) of the Exchange Act.

18.     **Deep South** is a Louisiana limited liability company with its principal place of business in Pineville, Louisiana.  Deep South and its securities are not registered with the Commission in any capacity.

## FACTS

19.     When Fuselier joined New Leaf in February 2012, New Leaf was a beverage company that sold its branded ready-to-drink teas and lemonades in stores nationwide.  Despite the purported popularity of New Leaf's award-winning teas with consumers, New Leaf began to

experience significant financial challenges, in part due to its rapid expansion. During the second half of 2011, New Leaf considered reorganization and other turnaround alternatives.

20.     New Leaf's board of directors ultimately elected David Fuselier as its new chairman and chief executive officer, and his company, Fuselier and Co., as its turnaround consultants. New Leaf entered into a compensation arrangement with Fuselier, which entitled him to an annual salary of $150,000 and the right to earn up to 34 million shares of New Leaf common stock in 2012 and 12 million shares thereafter annually.

21.     In August 2012, shortly after Fuselier had joined New Leaf, Integrated Freight's board of directors elected Fuselier as its new chairman and chief executive officer, and Fuselier and Co. as its turnaround consultants. Similar to New Leaf, Integrated Freight had suffered recurring losses from operations prior to Fuselier's arrival. The compensation arrangement gave Fuselier an annual salary of $150,000, with five percent annual increases and an annual bonus award based on the achievement of established financial goals as set forth annually by the board of directors, and the right to earn up to 34 million shares of Integrated Freight common stock in 2012 and 12 million shares thereafter annually.

**The Sale of Non-Operational Subsidiaries to Deep South**

22.     During his first few weeks on the job, Fuselier began implementing plans to restructure New Leaf and Integrated Freight. Fuselier wanted to improve the appearance of the Companies' respective financial condition by selling their non-operational subsidiaries to a buyer, which would then assume the subsidiaries' liabilities and generally indemnify New Leaf and Integrated Freight with respect to those liabilities.

23.     Fuselier knew that he was unlikely to find any willing third-party buyers because the subsidiaries had no operations, no assets not subject to security interests, and significant liabilities. And Fuselier knew that if his name was associated with the buyer, the Companies

would be required to disclose the sales as related-party transactions in their filings with the Commission. Such disclosures would alert the investing public that the transactions between the Companies and the buyer were not arms' length.

24.    To avoid detection, Fuselier persuaded Erwin to be the sole owner and managing member of a new limited liability company that would acquire the subsidiaries. Fuselier directed his business associate to work with Erwin to form the limited liability company, Deep South, which was formed on February 27, 2012.

25.    Erwin was complicit in Fuselier's fraudulent scheme to improperly remove significant liabilities from the Companies' financial statements. Erwin knew that the only purpose of the transactions was to make the Companies' financial statements falsely appear stronger. He also knew that the Companies made periodic filings with the Commission. In addition, Erwin knew or was reckless in not knowing that Deep South did not have any assets, let alone assets sufficient to cover the liabilities it had assumed or to generally indemnify the Companies with respect to these liabilities.

New Leaf

26.    On April 9, 2012, only a few weeks after Deep South was formed, New Leaf completed the sale of its subsidiary, Nutritional Specialties, Inc. ("NSI"), to Deep South.

27.    In connection with the sale, New Leaf transferred an outstanding note payable between New Leaf and a former owner of NSI with a remaining balance as of December 31, 2010 of approximately $822,920. New Leaf was in default on its payment obligations and the note was the subject of a then-pending lawsuit between New Leaf and the former owner's estate

in California state court ("Krech Litigation").[1]

28.     New Leaf disclosed the sale as a subsequent event in its Form 10-K for the fiscal

year ended December 31, 2011 and filed late, on July 30, 2012 ("New Leaf's 2011 10-K"):

> On April 9, 2012 the Company completed the sale of its non-operating
> subsidiary Nutritional Specialties, Inc. (NSI) to Deep South Capital, LLC
> (DSCL). The terms of the divestiture was for a consideration of $1.00
> plus the assumption of certain liabilities by DSCL. In addition, the
> Company gave DSCL 6,000,000 shares of the Company's stock to [sic] as
> a reserve against possible offsets. The transaction will reduce liabilities by
> approximately $1,000,000.

29.     Paragraph 5.1 of the NSI SPA, within the section titled "Indemnification," further

states:

> Deep South hereto agrees to indemnify and hold harmless [New Leaf]
> from and in respect of any cost, loss, damage, liability or expense which
> such other party may suffer or incur, whether at law or in equity, arising
> out, resulting from or in connection with (a) any existing liability of NSI,
> whether fixed or contingent, known or unknown, absolute or otherwise or
> (b) the inaccuracy of any representation or warranty contained herein, for
> the time periods [36 months after the Closing Date]. [New Leaf] shall
> have no obligation of indemnity hereunder of any nature or kind.

30.     In the Form 10-Q for the quarter ended March 31, 2012, which New Leaf filed

late, on February 6, 2013 ("New Leaf's Q1 2012 10-Q"), the approval of the pending sale of NSI

to Deep South was reflected in the financial statements and all comparative periods were restated

to reflect the pending sale. Approximately $823,000 of the then-current portion of long-term

debt and $12,692 of accounts payable and accrued expenses were reclassified to the current

liabilities of discontinued operations line on the balance sheet. Although the reclassification did

not impact the total current liabilities line item, it made it falsely appear that the debt to be

transferred to Deep South would soon be eliminated.

---

[1] On December 12, 2014, the court handling the Krech Litigation entered a judgment against
New Leaf in the amount of $1,031,376.68, comprising the then-remaining balance on the
outstanding note payable plus prejudgment interest, attorneys' fees, and costs.

31.     New Leaf's Q1 2012 10-Q also states that Deep South "assumed this obligation and indemnified [New Leaf] for the note payable with a current balance of $822,920 from the estate of a former owner of [NSI]," and that the 6,000,000 shares of New Leaf stock that New Leaf issued to Deep South "as a reserve against possible offsets" was valued at approximately $180,000.

32.     In the Form 10-Q for the quarter ended June 30, 2012, which New Leaf filed late, on April 5, 2013 ("New Leaf's Q2 2012 10-Q"), the balance sheet reflects liabilities for discontinued operations of $0, indicating that the liabilities had been removed from New Leaf's books.  In addition to decreasing its total liabilities, New Leaf recognized a gain on disposal of discontinued operations in the amount of $758,490, which it recorded as income.

33.     As of June 30, 2012, New Leaf reported a net loss from continuing operations in the amount of $737,518.  However, by recording the gain on disposal of discontinued operations in the amount of $758,490, New Leaf was able to report a total net income in the amount of $218,562.

34.     New Leaf's Q2 2012 10-Q also states that Deep South "assumed this obligation and indemnified [New Leaf] for the note payable with a current balance of $822,920 from the estate of a former owner of [NSI]," and that the 6,000,000 shares of New Leaf stock that New Leaf issued to Deep South as a reserve against possible offsets were valued at approximately $180,000.

35.     The balance sheet included in the Form 10-Q for the quarter ended September 30, 2012, which New Leaf filed late, on June 27, 2013 ("New Leaf's Q3 2012 10-Q"), again reflects a $0 balance for liabilities for discontinued operations and a gain on disposal of discontinued operations in the amount of $758,490.

36.     New Leaf's Q3 2012 10-Q also states that Deep South "assumed this obligation and indemnified [New Leaf] for the note payable with a current balance of $822,920 from the estate of a former owner of [NSI]," and that the 6,000,000 shares of New Leaf stock that New Leaf issued to Deep South as a reserve against possible offsets were valued at approximately $180,000.

Integrated Freight

37.     Effective June 30, 2012, Integrated Freight sold all of the common stock of three of its subsidiaries, Triple C Transport, Inc. ("Triple C"), Cross Creek Trucking, Inc. ("Cross Creek"), and Integrated Freight Services, Inc. ("IFS") to Deep South.  At the time of the sales, all three subsidiaries were non-operational.  Triple C had lost its license to operate, and Cross Creek and IFS were both closed in December 2011.  As part of the transaction, Deep South agreed to indemnify Integrated Freight for any losses associated with these subsidiaries.

38.     In a Current Report on Form 8-K filed on October 5, 2012, Integrated Freight stated the following:

> Effective June 30, 2012, we sold all of the common stock of our subsidiary, [Cross Creek] to [Deep South] for $1.  Cross Creek had no operations, no assets not subject to security interests and liabilities of approximately $2.2 million.  We issued 5,000,000 shares of our common stock, valued at $25,000 based on the closing price of our common stock reported on OTCMarkets.com on that date, to [Deep South] as an inducement for its purchase of our subsidiary.  We do not expect to incur any future cost associated with the disposal of Cross Creek.
>
> Effective June 30, 2012, we sold all of the common stock of our subsidiary, Triple C to [Deep South] for $1.  Triple C had no operations, no assets and liabilities of approximately $1.8 million.  We issued 5,000,000 shares of our common stock, valued at $25,000 based on the closing price of our common stock reported on OTCMarkets.com on that date, to [Deep South] as an inducement for its purchase of our subsidiary.  We do not expect to incur any future cost associated with the disposal of Triple C.

39.     Contrary to the disclosure in the Form 8-K filed on October 5, 2012, Integrated

12

Freight did not issue the 10 million shares to Deep South until May 1, 2015, after Fuselier was aware of the Commission's investigation and interest in the subsidiary sales to Deep South.

40.     On June 25, 2013, Integrated Freight, in its untimely filed Form 10-K for the fiscal year ended March 31, 2012 ("Integrated Freight's 2012 10-K"), disclosed the sale of IFS to Deep South.

41.     In Integrated Freight's Form 10-K for the fiscal year ended March 31, 2013, which Integrated Freight also filed late, on March 9, 2015 ("Integrated Freight's 2013 10-K"), Integrated Freight again disclosed the sales of Cross Creek, Triple C, and IFS to Deep South and reported a $4.36 million gain from discontinued operations on the income statement.

42.     As of March 31, 2013, Integrated Freight reported net income from continuing operations in the amount of $ 451,569.  However, by recording the gain on disposal of discontinued operations, Integrated Freight was able to report a total net income that was significantly higher, $4,812,458.

43.     Integrated Freight's Form 10-K for the fiscal year ended March 31, 2014, which Integrated Freight filed late, on April 30, 2015 ("Integrated Freight's 2014 10-K"), also discussed the sales of Cross Creek, Triple C, and IFS to Deep South and noted a $4.3 million gain from discontinued operations for the fiscal year ended March 31, 2013.

**The Deep South Transactions Were a Sham Devised by the Defendants to Fraudulently and Materially Misstate the Companies' Financial Condition**

44.     Deep South was essentially a shell company created at Fuselier's direction and under his control.  It had no economic substance, let alone the capacity to satisfy the significant liabilities it had assumed in acquiring the Companies' non-operational subsidiaries.  In other words, Fuselier knew or recklessly disregarded that the liabilities purportedly transferred to Deep South remained liabilities of the Companies because the purported indemnifications given by

Deep South were worthless. As a result of these sham transactions, the Companies' financial statements were materially misstated under Generally Accepted Accounting Principles ("GAAP").

45.     Regulation S-X, Section 4-01(a) mandates that financial statements and accompanying notes be presented in conformity with GAAP. The Companies' filings with the Commission during the period July 2012 to April 2015 violated GAAP with respect to (a) related party disclosures; (b) derecognition of a liability by New Leaf; and (c) recognition and disclosure of a loss contingency, as described below.

Related Party Disclosures

46.     GAAP under Accounting Standards Codification ("ASC") Topic 850-10-50-6, Related Party Disclosures, provides:

> If the reporting entity and one or more other entities are under common ownership or management control and the existence of that control could result in operating results or financial position of the reporting entity significantly different from those that would have been obtained if the entities were autonomous, the nature of the control relationship shall be disclosed even though there are no transactions between the entities.

47.     The following filings are false concerning the subsidiary sales to Deep South because they failed to disclose, as required by GAAP under ASC Topic 840-10-50-6, the nature of Fuselier's control over Deep South: New Leaf's 2011 10-K; New Leaf's Q1 2012 10-Q; New Leaf's Q2 2012 10-Q; New Leaf's Q3 2012 10-Q; Integrated Freight's 2012 10-K; Integrated Freight's 2013 10-K; Integrated Freight's 2014 10-K; and the Form 8-K Integrated Freight filed on October 5, 2012 (the "Companies' Impacted Filings").

48.     The Companies and Deep South were under common management control and the existence of that control could have resulted in operating results or financial position of the

Companies significantly different from those that would have been obtained if the entities were autonomous:

      a. Fuselier caused the formation of Deep South only weeks before the sale of NSI to Deep South.

      b. Fuselier was the signatory on a bank account in Deep South's name that was opened on July 25, 2012, a few weeks after the effective date of the sales of Cross Creek, Triple C and IFS to Deep South.  Erwin – the sole owner and managing member of Deep South – was not even aware of the existence of the bank account.

      c. The mailing address listed on the bank account opening paperwork was New Leaf's corporate address at the time in New Jersey.

      d. Two days after the bank account was opened, on July 27, 2012, Fuselier caused Deep South to obtain $100,000 in financing from a lender.  Four days later, on July 31, 2012, $87,500 of the $100,000 Deep South had obtained from the lender was transferred to a bank account owned by Fuselier.

49.    Fuselier orchestrated the sale of the non-operational subsidiaries to Deep South, was involved in drafting and reviewing each of the Companies' Impacted Filings, and responded to inquiries from the Companies' outside auditors regarding the sale of the non-operational subsidiaries to Deep South and the disclosure of related-party transactions.

50.    During his time at the Companies, Fuselier received from New Leaf approximately $171,000 in compensation, funded by money raised from investors, $80,000 of which was received after New Leaf had filed the false and misleading reports with the Commission, and approximately $47,000 in compensation from Integrated Freight, funded by

money raised from investors, all of which was received after Integrated Freight had filed the false and misleading reports with the Commission.

51.     Fuselier signed each of the Companies' Impacted Filings. When doing so, Fuselier knew or was reckless in not knowing that the Companies' Impacted Filings were materially false and misleading because they failed to disclose, as required by GAAP under ASC Topic 840-10-50-6, the nature of Fuselier's control over Deep South.

52.     Fuselier also signed SOX certifications, which New Leaf and Integrated Freight attached to the Companies' Impacted Filings, with the exception of New Leaf's Q1 2012 10-K and Integrated Freight's 2012 10-K. In each SOX certification, Fuselier falsely represented that the report did not contain any untrue statement or omission of a material fact and that the financial statements in the report fairly presented in all material respects the financial condition and results of the operation of the issuer. Fuselier knew or was reckless in not knowing that his SOX certifications were materially false and misleading because the Companies' reports had not disclosed the common control relationship with Deep South.

Derecognition by New Leaf of Outstanding Note Payable

53.     GAAP under ASC Topic 405-20-401 provides:

> [A] debtor shall derecognize a liability if and only if it has been extinguished. A liability has been extinguished if either of the following conditions is met: (a) the debtor pays the creditor and is relieved of its obligation for the liability . . . or (b) the debtor is legally released from being the primary obligor under the liability, either judicially or by the creditor.

54.     New Leaf was the primary obligor to the former owner of NSI on the note payable obligation. In accordance with ASC Topic 405-20-401, New Leaf should not have derecognized the outstanding debt relating to NSI as the payment obligation was still that of New Leaf.

55.     As a result of the misapplication of GAAP, the balance sheets of New Leaf as set forth in New Leaf's Q2 2012 10-Q and New Leaf's Q3 2012 10-Q are misstated for the missing debt and the income statements are overstated as a result of the recognition of the gain.

56.     Fuselier knew or was reckless in not knowing that New Leaf was the primary obligor to the former owner of NSI on the note payable obligation and was involved in settlement negotiations with counsel to the estate of the former owner of NSI in the Krech Litigation.

57.     Fuselier signed New Leaf's Q2 2012 10-Q and New Leaf's Q3 2012 10-Q.  When doing so, Fuselier knew or was reckless in not knowing that these filings were materially false and misleading because of the improper derecognition of the outstanding debt relating to NSI.

58.     Fuselier also signed SOX certifications, which New Leaf attached to New Leaf's Q2 2012 10-Q and New Leaf's Q3 2012 10-Q.  Fuselier knew or was reckless in not knowing that his SOX certifications were materially false and misleading because New Leaf had improperly derecognized the outstanding debt relating to NSI.

Nebraska State Court Judgment

59.     Integrated Freight's 2012 10-K and Integrated Freight's 2013 10-K contained misleading and inaccurate statements concerning a court order and judgment that was issued against Integrated Freight, relating to Triple C.

60.     GAAP under ASC Topic 450-20, Loss Contingencies, defines loss contingency as "an existing condition, situation, or set of circumstances involving uncertainty as to possible loss to an entity that will ultimately be resolved when one or more future events occur or fail to occur."  Under these guidelines, an issuer is required to assess the likelihood that the future event or events will confirm the loss or impairment of an asset or the incurrence of a liability.

61.     When a loss is deemed probable and the amount of the loss can be reasonably estimated, the issuer is required to accrue the estimated loss.  If a loss is probable but a reasonable estimate of the amount of the loss cannot be made, the issuer is required to disclose the nature of the contingency and provide an estimate of the loss or range of loss or a statement that such an estimate cannot made.  Disclosure is preferable to accrual when a reasonable estimate of loss cannot be made.  When a loss is reasonably possible, disclosure of the nature of the contingency and an estimate of the possible loss or range of loss or a statement that an estimate cannot be made is required.  Neither accrual nor disclosure is required if the loss contingency is remote.

62.     On July 3, 2012, a Nebraska state court issued an order and judgment against Integrated Freight in the amount of $8,435,780.74, in a lawsuit originally filed by Integrated Freight against the former owners of Triple C.  However, Integrated Freight's 2012 10-K, for the period ended March 31, 2012 and filed over a year later on June 25, 2013 (well after the issuance of the judgment), states that Integrated Freight "intend[s] to pursue this litigation aggressively." This statement was false and misleading because the Nebraska state court had issued the order and judgment prior to the filing of the Integrated Freight's 2012 10-K.

63.     Further, the order and judgment are neither reported in the financial statements contained in Integrated Freight's 2013 10-K, nor are they disclosed in the notes, as required by GAAP under ASC Topic 450-20, Loss Contingencies.  As Integrated Freight reported net income of $4.8 million during the period ended March 31, 2013, the Nebraska state court judgment in the amount of $8,435,780.74 was material to Integrated Freight.

64.     Fuselier was aware of all pending litigations involving Integrated Freight, especially including those – like the Nebraska state court litigation – in which Integrated Freight

was the plaintiff.  Fuselier was also involved in drafting and reviewing Integrated Freight's 2012

10-K and Integrated Freight's 2013 10-K and responded to inquiries from Integrated Freight's

auditor regarding the status of all pending litigations involving Integrated Freight.  Fuselier

therefore knew or was reckless in not knowing that the Nebraska state court had issued an order

and judgment against Integrated Freight in the amount of $8,435,780.74 on July 3, 2012.

65.     Fuselier signed Integrated Freight's 2012 10-K and Integrated Freight's 2013 10-

K.  When doing so, Fuselier knew or was reckless in not knowing that these filings were

materially misleading and inaccurate concerning the Nebraska state court judgment.

66.     Fuselier also signed a SOX certification, which Integrated Freight attached to

Integrated Freight's 2013 10-K.  Fuselier knew or was reckless in not knowing that his SOX

certification was materially false and misleading because Integrated Freight's report had not

disclosed the Nebraska state court judgment.

**New Leaf's Indemnification Disclosures Were Materially False and Misleading**

67.     The disclosures concerning Deep South's agreement to indemnify New Leaf in

New Leaf's 2011 10-K, New Leaf's Q1 2012 10-Q, New Leaf's Q2 2012 10-Q, and New Leaf's

Q3 2012 10-Q, were materially misleading and inaccurate.

68.     Specifically, New Leaf's 2011 10-K states that the terms of the sale of NSI to

Deep South was for "a consideration of $1.00 plus the assumption of certain liabilities by [Deep

South," and New Leaf's three quarterly reports for 2012 each state that Deep South "assumed

this obligation and indemnified [New Leaf] for the note payable with a current balance of

$822,920 from the estate of a former owner of [NSI]."

69.     Fuselier knew that Deep South had no assets or revenue stream, therefore making

it unlikely that Deep South would ever be able to cover the liabilities it agreed to assume,

including the Krech Litigation, or be able to make good on any broad indemnification provided to New Leaf. Indeed, Deep South has never had any operations or earned any revenue.

70.     Fuselier was involved in drafting and reviewing New Leaf's 2011 10-K, New Leaf's Q1 2012 10-Q, New Leaf's Q2 2012 10-Q, and New Leaf's Q3 2012 10-Q. Fuselier also signed New Leaf's 2011 10-K, New Leaf's Q1 2012 10-Q, New Leaf's Q2 2012 10-Q, and New Leaf's Q3 2012 10-Q. When doing so, Fuselier knew or was reckless in not knowing that these filings were materially false and misleading because Deep South did not have the financial wherewithal to indemnify New Leaf, leaving New Leaf exposed to liabilities that had purportedly been transferred to Deep South.

71.     Fuselier also signed a SOX certification, which New Leaf attached to New Leaf's 2011 10-K. Fuselier knew or was reckless in not knowing that his SOX certification was materially false and misleading concerning Deep South's agreement to assume the Krech Litigation and to generally indemnify New Leaf.

**Fuselier Lied to New Leaf's and Integrated Freight's Auditors**

72.     Fuselier failed to disclose material facts concerning the subsidiary sales to Deep South to New Leaf's and Integrated Freight's auditors. Specifically, Fuselier failed to disclose the circumstances under which Deep South was created; that Fuselier possessed the power to direct or cause the direction of the management of Deep South; and that Deep South likely would be unable to cover the liabilities it agreed to assume when it purchased the non-operational subsidiaries. Fuselier knew, or was reckless in not knowing, that these facts were relevant to the auditors because the auditors questioned Fuselier about the Deep South transactions during their annual audits and quarterly reviews, including questions about whether the transactions would constitute related-party transactions under GAAP.

73.     Fuselier also signed management representation letters to New Leaf's auditor in connection with the audit for the fiscal year ended December 31, 2011, and for the reviews for the first three quarters of 2012, falsely representing that (a) he had no knowledge of any fraud or suspected fraud affecting the entity; and (b) related-party transactions and related amounts receivable or payable, including sales, purchases, loans, transfers, leasing arrangements, and guarantees had been properly recorded or disclosed in the financial statements.

74.     As the orchestrator of the sale of the non-operational subsidiaries to Deep South, and in his roles as chairman, chief executive officer, and principal financial and accounting officers of both Companies, Fuselier knew that the foregoing statements and omissions to New Leaf's and Integrated Freight's auditors were false and did not make those false statements and omissions through ignorance, mistake, or accident.

### FIRST CLAIM FOR RELIEF
**Fraud in Connection with the Purchase and Sale of Securities**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**(Defendants Fuselier and Integrated Freight)**

75.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 74, as if fully set forth herein.

76.     Defendants Fuselier and Integrated Freight, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

77.     By reason of the foregoing, Defendants Fuselier and Integrated Freight, directly or indirectly, singly or in concert, have violated, and unless enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(a), (b) and (c)].

### SECOND CLAIM FOR RELIEF
**Fraud in the Offer or Sale of Securities**
**Violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act**
**(Defendants Fuselier and Integrated Freight)**

78.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 74, as if fully set forth herein.

79.     Defendants Fuselier and Integrated Freight, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails knowingly, recklessly, or negligently (a) employed devices, schemes, or artifices to defraud; and (b) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

80.     By reason of the foregoing, Defendants Fuselier and Integrated Freight, directly or indirectly, singly or in concert, have violated, and unless enjoined, will again violate Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

### THIRD CLAIM FOR RELIEF
**Fraud in the Offer or Sale of Securities**
**Violations of Section 17(a)(2) of the Securities Act**
**(Defendant Fuselier)**

81.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 74, as if fully set forth herein.

82.     Defendant Fuselier, directly or indirectly, in the offer or sale of securities and by

the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails knowingly, recklessly, or negligently obtained money or property by means of untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

83.     By reason of the foregoing, Defendant Fuselier, directly or indirectly, has violated, and unless enjoined, will again violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

### FOURTH CLAIM FOR RELIEF
**Reporting Violations**
**Violations of Section 13(a) of the Exchange Act and**
**Rules 12b-20, 13a-1, and 13a-11**
**(Defendant Integrated Freight)**

84.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 74, as if fully set forth herein.

85.     Defendant Integrated Freight filed the following false and misleading reports: Integrated Freight's 2012 10-K, Integrated Freight's 2013 10-K, Integrated Freight's 2014 10-K, and Integrated Freight's Form 8-K filed on October 5, 2012.  These filings were false and misleading because they failed to disclose the related-party nature of the Deep South transactions and failed to disclose or account for a judgment issued against it by a Nebraska state court.

86.     By reason of the foregoing, Defendant Integrated Freight violated, and unless enjoined, will again violate Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-11 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11].

## FIFTH CLAIM FOR RELIEF
### Aiding and Abetting New Leaf's and Integrated Freight's Reporting Violations
### Violations of Section 20(e) of the Exchange Act
### (Defendant Fuselier)

87.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 74, as if fully set forth herein.

88.     New Leaf and Integrated Freight violated Section 13(a) of the Exchange Act and

Rules 12b-20, 13a-1 and 13a-11, and New Leaf violated Rule 13a-13, thereunder by filing the

Companies' Impacted Filings, which were false and misleading.

89.     Fuselier provided substantial assistance in the commission of the foregoing

reporting violations because he knowingly orchestrated the sales to Deep South for the specific

purpose of improving the Companies' financial statements in the Companies' false filings with

the Commission and signed each of the Companies' Impacted Filings in his capacity as the

Companies' chairman, chief executive officer, and principal financial and accounting officer.

90.     By reason of the foregoing, Fuselier aided and abetted, and unless enjoined, will

continue to aid and abet, violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)]

and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1,

240.13a-11, and 240.13a-13], in violation of Section 20(e) of the Exchange Act [15 U.S.C. §

78t(e)].

## SIXTH CLAIM FOR RELIEF
### Books and Records Violation
### Violations of Section 13(b)(2)(A) of the Exchange Act
### (Defendant Integrated Freight)

91.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 74, as if fully set forth herein.

92.     Defendant Integrated Freight failed to make and keep books, records, and

accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of the issuer, in connection with the sales of Cross Creek, Triple C and IFS to Deep South.

93.     By reason of the foregoing, Defendant Integrated Freight violated, and unless enjoined, will continue to violate Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(a)].

**SEVENTH CLAIM FOR RELIEF**
**Aiding and Abetting New Leaf's and Integrated Freight's**
**Books and Records Violations**
**Violations of Section 20(e) of the Exchange Act**
**(Defendant Fuselier)**

94.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 74, as fully set forth herein.

95.     Defendant Fuselier knowingly or recklessly provided substantial assistance to New Leaf and Integrated Freight, who failed to make or keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer, in connection with the sales of NSI, Cross Creek, Triple C and IFS to Deep South.

96.     By reason of the foregoing, Defendant Fuselier aided and abetted, and unless enjoined, will continue to aid and abet, violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(a)], in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

**EIGHTH CLAIM FOR RELIEF**
**False SOX Certification**
**Violations of Exchange Act Rule 13a-14(a)**
**(Defendant Fuselier)**

97.     The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 74, as if fully set forth herein.

98.     Defendant Fuselier, the chief executive officer of New Leaf and Integrated

Freight, signed certifications of New Leaf's 2011 10-K, New Leaf's Q2 2012 10-Q, New Leaf's

Q3 2012 10-Q, Integrated Freight's 2013 10-K, and Integrated Freight's 2014 10-K in

accordance with Section 302 of the Sarbanes-Oxley Act of 2002 and Rule 13a-14 promulgated

thereunder.  Those certifications were false because Fuselier represented that the reports did not

contain any untrue statement or omission of material fact and the financial statements in the

reports fairly presented in all material respects the financial condition and results of the

operations of the issuers.  At the time he signed the certifications, Fuselier was aware that the

Companies' filings contained material misstatements and omissions concerning the sales of NSI,

Cross Creek, Triple C and IFS to Deep South.

99.     By reason of the foregoing, Defendant Fuselier violated, and unless enjoined, will

again violate Rule 13a-14 of the Exchange Act [17 C.F.R.  § 240.13a-14].

### NINTH CLAIM FOR RELIEF
**Falsification of Accounting Records**
**Violations of Exchange Act Rule 13b2-1**
**(Defendant Fuselier)**

100.    The Commission realleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 74, as if fully set forth herein.

101.    Defendant Fuselier, directly or indirectly, falsified or caused to be falsified any

book, record or account subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §

78m(b)(2)].

102.    By reason of the foregoing, Defendant Fuselier violated, and unless enjoined, will

continue to violate Rule 13b2-1 of the Exchange Act [17 C.F.R.  § 240.13b2-1].

## TENTH CLAIM FOR RELIEF
### Lying to the Auditor
### Violations of Exchange Act Rule 13b2-2
### (Defendant Fuselier)

103.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 74, as if fully set forth herein.

104.    Defendant Fuselier, while acting as an officer of two issuers, directly or indirectly, (i) made or caused to be made materially false or misleading statements to an accountant in connection with; or (ii) omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with: any audit, review or examination of the financial statements of the issuer required to be made pursuant to Section 13 of the Exchange Act [15 U.S.C. § 78m(b)(2)), or the preparation or filing of any document or report required to be filed with the Commission pursuant to Section 13 of the Exchange Act [15 U.S.C. § 78m(b)(2)], or otherwise.

105.    By reason of the foregoing, Defendant Fuselier violated, and unless enjoined, will continue to violate Rule 13b2-2 of the Exchange Act [17 C.F.R. § 240.13b2-2].

## ELEVENTH CLAIM FOR RELIEF
### Aiding and Abetting Fraud in the Offer or Sale of Securities
### Violations of Section 15(b) of the Securities Act
### (Defendant Erwin)

106.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 74, as if fully set forth herein.

107.    Defendant Erwin knowingly or recklessly provided substantial assistance to Fuselier, who, directly or indirectly, in the offer or sale of securities and by use of the means or instruments of transportation or communication in interstate commerce or by the use of mails, (a)

employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

108.    By reason of the foregoing, Defendant Erwin aided and abetted, and unless enjoined, will continue to aid and abet, violations of Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)], in violation of Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)].

### TWELFTH CLAIM FOR RELIEF
**Aiding and Abetting Fraud in Connection with the Purchase and Sale of Securities
Violations of Section 20(e) of the Exchange Act
(Defendant Erwin)**

109.    The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 74, as if fully set forth herein.

110.    Defendant Erwin knowingly or recklessly provided substantial assistance to Fuselier, who, directly or indirectly, in connection with the purchase or sale of securities and by the use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

111.    By reason of the foregoing, Defendant Erwin aided and abetted, and unless enjoined, will continue to aid and abet, violations of Section 10(b) of the Exchange Act [15

U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(a), (b) and (c)], in violation

of in violation of Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)].

### PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final

Judgment:

### I.

Permanently enjoining each of the Defendants from committing, aiding and abetting or

otherwise engaging in conduct that would make them liable for the violations of the federal

securities laws alleged in this complaint.

### II.

Ordering Defendant Fuselier to disgorge any ill-gotten gains and to pay prejudgment

interest on those amounts, jointly and severally.

### III.

Ordering each of the Defendants to pay civil monetary penalties pursuant to Section

20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15

U.S.C. § 78u(d)(3)].

### IV.

Ordering that Defendants Fuselier and Erwin each be barred from serving as an officer

and director of any public company pursuant to Section 20(e) of the Securities Act [15 U.S.C. §

77t(e)], and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

### V.

Ordering that Defendants Fuselier and Erwin be barred from participating in any offering

of a penny stock pursuant to Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)] and

Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)].

**VI.**

Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: New York, New York
       June 6, 2017

Respectfully submitted,

By: _____
    Andrew M. Calamari
    Lara Shalov Mehraban
    Adam S. Grace
    Michael D. Birnbaum
    Kristin M. Pauley
    *Attorneys for Plaintiff*
    U.S. Securities and Exchange Commission
    New York Regional Office
    200 Vesey Street, Suite 400
    New York, New York 10281-1022
    Tel: (212) 336-0523 (Birnbaum)